JUDGE FAILLA    **13 CV 8160**

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Kevin Chan (KC 0228)
kchan@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827



RECEIVED NOV 15 2013 U.S.D.C. S.D.N.Y. CASHIERS

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAGENDYK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. RUCKER, TIMOTHY CLAYTON, and TILE SHOP HOLDINGS, INC.<br><br>Defendants. | Case No:<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

1

Plaintiff Jeffrey Lagendyk, individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Tile Shop Holdings, Inc. ("Tile Shop" or the "Company"), and analyst and other media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased the common stock, call options or sold put options of Tile Shop from August 22, 2012, to November 13, 2013, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Tile Shop, certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Defendant Tile Shop is a Delaware corporation, whose headquarters is located in Plymouth, Minnesota and whose shares trade on the NASDAQ Stock Market. Tile Shop is a specialty retailer of manufactured and natural stone tiles, setting and maintenance materials, and related accessories in the United States.

3. Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made

false and/or misleading statements and/or failed to disclose that its largest supplier is an undisclosed related company and the Company has used its undisclosed related party and improper accounting to overstate profits.

4. When the market learned of the undisclosed related party and improper accounting, the Company's stock price plunged, damaging investors.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

7. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as the Company conducts business in this district.

8. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

9. Plaintiff Jeffrey Lagendyk ("Lagendyk"), as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Tile Shop during the Class Period and has been damaged thereby. Plaintiff Lagendyk is a resident of New York.

10. Defendant Tile Shop is a Delaware company with headquarters in Plymouth, Minnesota. It operates as a specialty retailer of manufactured and natural stone tiles, setting and maintenance materials, and related accessories in the United States.

11. Defendant Robert A. Rucker ("Rucker") has been the Company's Chief Executive Officer ("CEO") and President and a member of its board of directors since June 2012.

12. Defendant Timothy Clayton ("Clayton") has been the Company's Chief Financial Officer ("CFO") and Senior Vice President since August 2012. From June 2012 to August 2012 Defendant Clayton served as a financial consultant to Tile Shop.

13. Defendants Rucker and Clayton are referred to here, collectively, as the "Individual Defendants."

14. Defendant Tile Shop and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## ALLEGATIONS OF FALSE STATEMENTS

15. On July 2, 2012, the Company filed a materially false and misleading Registration Statement on Form S-4 with the U.S. Securities and Exchange Commission (the "SEC") in connection with its public offering on August 22, 2012 (the "Offering"). The Registration Statement, signed by Defendant Rucker, also contained a Prospectus and both documents contained, among other things, the Company's financial results for fiscal year ended December 2011, 2010 and 2009 and results for the three months ended March 31, 2012.

16. The Registration Statement was subsequently amended and declared effective on August 2, 2012 and the Company filed the final prospectus with the SEC on August 3, 2012. The Registration Statement was signed by Defendant Rucker.

17. Under the Related Party Transactions section of the Notes to Condensed Consolidated Financial Statements in the Company's Registration Statement and final prospectus, the Company only disclosed the following two transactions, both of which involved Defendant Rucker: (1) The Special Cash Distribution Units issued by the Company owned by a related Key Management Personnel ("KMP") that receive annual payments of $300,000 for a term of 10 years through 2012; and (2) The Company has a note receivable from KMP. The note is due in annual installments of $300,000 of principal and interest at a rate of 2.6% per annum with a final installment due in 2012.

18. On August 22, 2012, the Company commenced the public trading of its common stock on the NASDAQ Stock Market under ticker "TTS."

19. On November 9, 2012, the Company filed with the SEC a materially false and misleading Form 10-Q for the quarterly period ended September 30, 2012 (the "2012 Third Quarter 10-Q").

20. Under the Related Party Transactions section of the Notes to Consolidated Financial Statements of the 2012 Third Quarter 10-Q, the Company only disclosed the following transactions:

> The Special Cash Distribution Units issued by The Tile Shop were owned by Mr. Robert Rucker, the President and CEO. The units received annual payments of $300,000 for a term of 10 years through 2012 and were fully paid as of June 30, 2012.
>
> The Tile Shop had a note receivable from Robert Rucker, the President and CEO. The note was due in annual installments of $300,000 of principal and interest at a rate of 2.6% per annum with a final installment due in 2012 which was fully received as of June 30, 2012.
>
> The Company has issued Promissory Notes to members of The Tile Shop for an aggregate principal amount of $69.8 million in connection with the Business Combination which were outstanding at September 30, 2012. The Company has recorded interest expense of $305,846 for the three and nine months ended September 30, 2012 related to these notes.

> During the three months ended September 30, 2012, the Company obtained an unsecured short term loan of $5.5 million from Nabron. The loan was obtained to provide short term working capital and liquidity for the Company. The loan was paid off during the three months ended September 30, 2012 with interest of $20,777.

21.     The 10-Q was signed by defendants Rucker and Clayton. Attached to the 10-Q were SOX certifications of Rucker and Clayton falsely attesting to the accuracy of the 10-Q.

22.     On March 18, 2013, the Company filed with the SEC a materially false and misleading Form 10-K for the fiscal year ended December 31, 2012 (the "2012 10-K).

23.     Under the Related Party Transactions section of the Notes to Consolidated Financial Statements of the 2012 10-K, the Company only disclosed the following transactions:

> In January 2012, TS, Inc., ILTS and JWTS sold (i) an aggregate of 129,333 Common Units of The Tile Shop to Mr. Krasnow, (ii) an aggregate of 646,667 Common Units of The Tile Shop to the Peter H. Kamin Revocable Trust dated February 2003, the Peter H. Kamin Childrens Trust dated March 2007, and 3K Limited Partnership, entities of which Mr. Kamin is trustee or general partner, as applicable, (iii) an aggregate of 25,867 Common Units of The Tile Shop to Family Office Investors LLC, an entity in which Mark Riser, a member of the board of managers of The Tile Shop prior to the consummation of the Business Combination, is the sole member, and (iv) an aggregate of 19,400 Common Units of The Tile Shop to Warren Garden, in each case for $7.732 per unit. In connection with these transactions, The Tile Shop made certain representations and warranties.
>
> During the years ended 2012 and 2011 The Tile Shop made payments of $300,000 to TS, Inc. in connection with the final redemption of an aggregate of 3,000,000 special cash distribution units of The Tile Shop issued to TS, Inc., which were fully-redeemed by The Tile Shop during 2012. In lieu of paying such amounts to TS, Inc. in cash, The Tile Shop reduced the outstanding amount under a promissory note, dated December 30, 2002, made by TS, Inc. and payable to The Tile Shop. Total principal payments made in cash related to this promissory note were approximately $1,205,000 and $263,000 for the years ended December 31, 2012 and 2011, respectively.

24.     The 10-K was signed by defendants Rucker and Clayton. Attached to the 10-K were SOX certifications of Rucker and Clayton falsely attesting to the accuracy of the 10-K.

6

25.  On May 10, 2013, the Company filed with the SEC a materially false and misleading Form 10-Q for the quarterly period ended March 31, 2013 (the "2013 First Quarter 10-Q").

26.  The 2013 First Quarter 10-Q did not disclose any related party transactions.

27.  The 10-Q was signed by defendants Rucker and Clayton. Attached to the 10-Q were SOX certifications of Rucker and Clayton falsely attesting to the accuracy of the 10-Q.

28.  On August 8, 2013, the Company filed with the SEC a materially false and misleading Form 10-Q for the quarterly period ended June 30, 2013 (the "2013 Second Quarter 10-Q").

29.  The 2013 Second Quarter 10-Q did not disclose any related party transactions.

30.  The 10-Q was signed by defendants Rucker and Clayton. Attached to the 10-Q were SOX certifications of Rucker and Clayton falsely attesting to the accuracy of the 10-Q.

31.  On November 6, 2013, the Company filed with the SEC a materially false and misleading Form 10-Q for the quarterly period ended September 30, 2013 (the "2013 Third Quarter 10-Q").

32.  The 2013 Second Quarter 10-Q did not disclose any related party transactions.

33.  The 10-Q was signed by defendants Rucker and Clayton. Attached to the 10-Q were SOX certifications of Rucker and Clayton falsely attesting to the accuracy of the 10-Q.

### THE TRUTH EMERGES

34.  On November 14, 2013, analyst firm Gotham City Research LLC ("Gotham") issued a report asserting that the Company's financial results have been overstated.

35.  The Gotham Report revealed for the first time that the Company's largest supplier, Beijing Pingxiu, is an undisclosed related company that accounts for 20% to over 30%

its cost of goods sold ("COGs"). According to Port Import Export Reporting Service ("PIERS") data, Tile Shop's supplies sourced from Beijing Pingxiu is as follow:

Beijing Pingxiu Shipments to TTS at % of Total

|                  | 2011 | 2012  | 2013*  |
|------------------|------|-------|--------|
| Beijing Pingxiu  | 8.3% | 16.3% | 32.2%  |

*through October 28, 2013

36. The Gotham Report disclosed that Beijing Pingxiu is controlled by Fumitake Nashi, who is the brother-in-law of Defendant Rucker and a Tile Shop employee.

37. Tile Shop does not mention Beijing Pingxiu in any of its previous SEC filings.

38. GAAP Statement of Financial Accounting Standards ("SFAS") and SEC regulation S-K required the Company to disclose all material related party transactions.

39. SFAS No. 57 and No. 850 provide that a public company's "[f]inancial statements shall include disclosures of material related party transactions." SFAS No. 57 ¶ 2; 850-10-50-1.

40. "Related party transactions" include those between "an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its "affiliates." SFAS No. 57 ¶ 1; 850-10-05-3. "Affiliate" includes any company that is under common control or management with the public company. SFAS No. 57 ¶ 24(a, b); 850-10-20.

41. Financial Statements not in compliance with GAAP are presumed to be misleading. SEC Regulation S-X, 17 C.F.R. § 210.4-01. Therefore, the Company's previous SEC filings were false and misleading for they fail to disclose its transactions with Beijing Pingxiu as material related party transactions.

42. The Gotham Report also revealed that Tile Shop's Trailing Twelve Months ("TTM") earnings of $28 million is overstated by 200% due to inventory overstatement.

43. This Gotham Report shocked the market and caused the Company's stock to fall $8.27/share or nearly 39% on November 14, 2013; all trading was halted in the Company's stock later that day.

44. On that same day, the Company issued a press release responding to the Gotham Report. While it denies the Gotham Report's findings, the Company also states, in relevant parts that:

> The Company has been made aware of changes of the ownership of Beijing Pingxiu which were not previously disclosed to the Company. As a result of this disclosure, The Company has suspended its relationship with this entity.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the common stock and call options and sellers of put options of Tile Shop during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

46. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tile Shop securities were actively traded on the NASDAQ Stock Market. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tile Shop or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a) whether the Exchange Act was violated by defendants as alleged herein;

   b) whether statements made by defendants misrepresented material facts about the business, operations and management of Tile Shop; and

   c) to what extent the members of the Class have sustained damages and the proper measure of damages.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

51. The market for Tile Shop common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, Tile Shop securities traded at artificially inflated prices during the

Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Tile Shop securities relying upon the integrity of the market price of Tile Shop securities and market information relating to Tile Shop, and have been damaged thereby.

52. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Tile Shop securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

53. At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Tile Shop's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Tile Shop and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing Tile Shop securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of Tile Shop common stock was removed and the price of Tile Shop common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
### *AFFILIATED UTE*

54. Neither Plaintiff nor the Class need prove reliance - either individually or as a class because under the circumstances of this case, which involves a failure to disclose the material related party transactions described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## LOSS CAUSATION/ECONOMIC LOSS

55. During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of securities and operated as a fraud or deceit on Class Period purchasers of Tile Shop securities by misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Tile Shop common stock fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of Tile Shop securities during the Class Period, plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against Defendant Tile Shop and the Individual Defendants

56. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This claim is asserted against Tile Shop and the Individual Defendants (the "First Claim Defendants").

58.     During the Class Period, the First Claim Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Tile Shop's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Defendants, and each of them, took the actions set forth herein.

59.     The First Claim Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Tile Shop's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.     The First Claim Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Tile Shop as specified herein.

61.     The First Claim Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tile Shop's value and

performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Tile Shop and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Tile Shop's securities during the Class Period.

62.  Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.  The First Claim Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or

recklessly and for the purpose and effect of concealing Tile Shop's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by these Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, the Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tile Shop securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Tile Shop's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the First Claim Defendants but not disclosed in public statements by the First Claim Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tile Shop securities during the Class Period at artificially high prices and were or will be damaged thereby.

65. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Tile Shop's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Tile Shop securities, or, if they had acquired such

common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

66. By virtue of the foregoing, the First Claim Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of the First Claim Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's Securities during the Class Period.

68. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### For Violations of §20(a) of the Exchange Act
### Against the Individual Defendants

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of Tile Shop within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72. As set forth above, Tile Shop and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

73. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

74. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Awarding rescissory damages; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 15, 2013                             Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

_____
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
Kevin Chan (KC 0228)
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Tile Shop Holdings, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Tile Shop Holdings, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** Jeffrey
**Middle initial:** M
**Last name:** Lagendyk
**Address:**
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**



**REDACTED**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 6/20/2013 | 100 | 28.88 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:        **YES**

**Certification for Jeffrey Lagendyk (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.        **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 11/14/2013

*/s/ Jeffrey Lagendyk*